UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   -v-                                                 CASE NO: 5:22-CR-0006 (GTS)
                                                         **DEFENSE SENTENCING MEMORANDUM**

RICHARD CURTIS,
                  Defendant.

---

**I.      PRELIMINARY STATEMENT**

On January 25, 2022, Richard Curtis ("Ricky") pled guilty to one count of receipt of child pornography (18 U.S.C. § 2252A(a)(2)(A)). (Minute Entry Jan. 25, 2022.) The events that led to these charges occurred during five weeks in the summer of 2017, just after Ricky's eighteenth birthday. There is a written plea agreement in the case. (Dkt. No. 29.) Sentencing is scheduled for May 24, 2022. (Dkt. No. 30.)

The United States Probation Department prepared a Presentence Investigation Report (*hereinafter* "PSR") on April 20, 2022, in anticipation of sentencing. (Dkt. No. 31.) The PSR sets forth a total offense level of 37 and a Criminal History Category of II. *Id*. ¶¶ 36, 48. The PSR states that the Guideline imprisonment range is 235 to 240 months. *Id*. ¶ 91. There is a statutory mandatory minimum term of incarceration of five years. The PSR notes that a below-Guideline sentence may be warranted in this case for four reasons. (Dkt. No. 31 ¶ 104.) First, Ricky is only twenty-two years old. *Id*. Second, he was diagnosed with Asperger's Syndrome as a toddler and has suffered from additional symptoms of ADHD and anxiety as he grew older. *Id*. Third, his prior criminal history is limited to a period of time between 2016 and 2017 when Ricky was seventeen and eighteen years old. *Id*. Fourth, Ricky has been compliant with the terms of his

1

pretrial release with both Onondaga County Probation and federal Pretrial Services for three years. *Id*. This compliance includes engagement in sex offender treatment. *Id*.

Ricky submits this memorandum in support of his request for the statutory mandatory minimum sentence of five years of incarceration, to be followed by fifteen years of supervised release. The statutory mandatory minimum is an appropriate sentence because of the role Ricky's Asperger's diagnosis played in the offense, the delay in charging Ricky, and Ricky's remarkable rehabilitation in the time since he committed the offense.

## II.  FACTUAL AND PROCEDURAL SUMMARY

Ricky was born in Syracuse in 1999. (Dkt. No. 31 ¶ 52.) He has lived for his entire life with his parents in Baldwinsville. *Id*. ¶ 55. By age three, Ricky had not yet begun speaking. *Id*. He was diagnosed with Asperger's Syndrome. *Id*. Later, he was also diagnosed with ADHD/ADD, anxiety, a learning disability, and a speech impediment. *Id*. ¶ 61. Like most children with similar conditions, he was placed on an Individualized Education Plan ("IEP") when he entered school. *Id*. Like many children with similar conditions, he was bullied. *Id*. ¶ 55. Ricky graduated from Liverpool High School in 2017 with a regent's diploma. *Id*. ¶ 71.  He turned eighteen years old a few months later. *Id*. ¶ 37.

On November 16, 2017, the New York State Police arrested Ricky after an image of child pornography was uploaded to his Facebook account. (Dkt. No. 31 ¶ 46.) In a statement to the state police, Ricky admitted receiving, looking at, and trading child pornography. *Id*. He also admitted having sexual contact with a male child and kissing and touching a female child. *Id*. Those hands-on offenses occurred when Ricky was sixteen and seventeen years old. The police were not investigating the hands-on offenses *and would not have learned of them* but for Ricky's honest and forthcoming confession. For the state child pornography offense, Ricky received a

2

sentence of ten years' probation.[1] *Id*. For the state offense of Criminal Sex Act 3rd, he was sentenced to one year of incarceration. *Id*. ¶ 47. During his incarceration in the county jail, Ricky was assaulted by another inmate and verbally bullied by other inmates because of behaviors associated with his Asperger's Syndrome. Ricky remains very fearful of incarceration.

During his state incarceration, Ricky was interviewed by federal agents. (Dkt. No. 31 ¶ 19.) Ricky admitted that between August 3, 2017, and September 13, 2017, he communicated with a female child ("V1") on Instagram, exchanged messages with her, and ultimately requested and received several videos of her engaging in sexual conduct. *Id*. ¶¶ 11-19. Ricky's online exchanges with VI led to the federal charge currently before the Court.

Ricky was released from his state incarceration on May 24, 2019. (Dkt. No. 31 ¶ 46.) Ricky's state arrests and incarceration were a wake-up call that changed his life. Since his release, Ricky has consistently abided by the terms of his county probation, which include no internet access, no smart phone access, and sex offender treatment. *Id*. All of Ricky's drug screens have returned negative, he reports to county probation as directed, and he has had no re-arrests. (Letter from Probation Supervisor Jack Hoppenstedt, filed separately.) Ricky passed his December 2021 maintenance polygraph, which tested him for any potential inappropriate contact with minors. *Id*. He has not engaged in any criminal conduct since he was eighteen years old.

Ricky's post offense rehabilitation has been remarkable and his progress in sex offender treatment has also been excellent. He contacted NuStep Professional Counseling Services immediately upon being released from jail and began individual therapy in June 2019. This was before his arrest on the federal charge (Letter from LCSW Catherine Diana, filed separately.) In counseling, Ricky has always taken full responsibility for his actions and expresses great remorse

---

[1] The federal offense occurred at the same time as the state offense for which Ricky is already well into serving a period of 10 years' probation without any violations.

for his sex offending behavior. *Id*. He suffers from extreme anxiety and has been placed on medication to manage that condition. *Id*. He has never missed an appointment, and often calls to schedule additional appointments when needed. *Id*. At each appointment, Ricky reviews safety planning with his counselor to avoid reoffending. *Id*. His counselor has observed that "[u]nlike most individuals who have sexually acted out and are mandated into treatment, Richard was able to make life changes immediately." *Id*. She states that Ricky "is one of the most respectful and committed young men this writer has ever worked with" during her forty years of treating sex offenders. *Id*. She opines that Ricky "continues to be at low risk to re-offend." *Id*.

Since his release from jail in 2019, Ricky has maintained seasonal employment in construction and landscaping. (Dkt. No. 31 ¶¶ 76-78.) He is a reliable, enthusiastic employee whose contributions are valued by his employers. (See letters of support from Joseph Breezee, Garry Schneider, Jr., and Keith Granholm, filed separately.) Ricky's employer told Ricky's counselor that "Ricky is one of my best employees; I wish they were all like him." (Diana Letter at 2.) During the winter seasons, Ricky stays busy fixing vehicles, assisting neighbors with chores, and doing volunteer work. (See letters of support from Officer Ronald H. Atwood, Mary Becker, Joseph Bolognone, and Robyn Reynolds, filed separately.)[2] He has incredible family support and is very close to his siblings, parents and friends (See letters of support Becky and Richard Curtis, Carol and Herb Curtis, Zachery Curtis, Danielle Marinelli, Joshua Hildreth and Cheryl Locey filed separately).

---

[2] Ricky has always been a hard worker, volunteering and maintaining at least seasonal employment since he was twelve years old. (Dkt. No. 31 ¶ 81.) Beginning at age twelve and continuing until his state arrest in 2017, Ricky continued a long tradition in his family by serving as a volunteer firefighter. *Id*. From the time he was fourteen until his senior year of high school, he worked as a custodian at the Vineyard Church in Syracuse. *Id*. During his senior year in high school, he worked at a furniture warehouse. *Id*. ¶ 80. From the time of his state arrest until his state incarceration, he worked in the electric department at Lowe's. *Id*. ¶ 79.

On January 27, 2021—three and a half years after his online interactions with V1 and two years after he had admitted those interactions to federal agents---Ricky was charged in this Court with receiving child pornography. (Dkt. No. 1.) Although the government sought detention and Pretrial Services opined that there were no conditions of release that could reasonably assure the safety of the community, the Court allowed Ricky to remain out of jail pending the resolution of this case. (Dkt. No. 30.) After Ricky entered his guilty plea on January 25, 2022, this Court allowed Ricky to remain out of jail despite the government's request for detention. (Minute Entry Jan. 25, 2022.) Over the last fifteen months, Ricky has lived up to the Court's trust in him. Pretrial Services reports that Ricky has complied with the conditions of his release and has not had any issues while on electronic monitoring. (Dkt. No. 31 ¶ 6.)

**III.     THE 18 U.S.C. § 3553(a) FACTORS WEIGH IN FAVOR OF A SENTENCE AT THE STATUTORY MANDATORY MINIMUM.**

After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the sentencing Guidelines are advisory rather than mandatory. Therefore, in determining a sentence, a court must equally consider the Guideline calculations, the unique characteristics of the defendant, and the other statutory concerns listed in 18 U.S.C. § 3553(a). Those factors include, *inter alia*,: (1) the nature and circumstances of the offense and the history and characteristics of the defendant;  (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (4) the need for the sentence imposed to protect the public from further crimes of the defendant; and (5) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a). Here, each of these factors weighs in favor of a below-Guideline sentence at the statutory minimum of five years of incarceration.

A. **Ricky's History and Characteristics Weigh in Favor of a Below-Guideline Sentence of Five Years Because His Offense Conduct Was Connected to his Diagnosis of Asperger's Syndrome.**

One factor that the Court must weigh under 18 U.S.C. § 3553(a) is the history and characteristics of the defendant. Here, that factor weighs in favor of a below-Guideline sentence because Ricky's offense conduct was connected to his diagnosis of Asperger's Syndrome. There is a wealth of scholarship about the connection between Asperger's Syndrome and child pornography. *See, e.g.*, Mahoney, *Asperger's Syndrome and the Criminal Law: The Special Case of Child Pornography*, https://www.aane.org/aspergers-syndrome-and-the-criminal-law-the-special-case-of-child-pornography/ (last visited Mar. 30, 2022) (collecting scholarship). Many of the behaviors that are markers of Asperger's Syndrome exacerbate an individual's likelihood of engaging with child pornography. *Id*. at 39-44. First, individuals with Asperger's frequently have intense curiosity and express that curiosity through obsessive collecting. *Id*. at 40. Thus, explains Mahoney, "an AS individual's extensive collection of child pornography may not really be about the sexually explicit depictions at all, but simply about collecting similar images." *Id*. Second, people with Asperger's Syndrome "interpret the world around them extremely literally" and, as a result, "may not believe that something readily available on the internet would also be illegal and considered morally reprehensible." Mahoney at 41. Third, individuals with Asperger's often have a "lethal combination" of technological skill and social naiveté that allows them to access child pornography without understanding "the cultural value assigned to images" that they are seeing. *Id.* Fourth, the difficulty that individuals with Asperger's have with reading social cues means that, when viewing child pornography, they "fail to recognize the abused children's anguish or anxiety." *Id*. at 43.

As Ricky's counselor explains in her letter to the Court:

> What is most important regarding Richard Curtis, is that he has been diagnosed with AutismSpectrum-Disorder. ASD is a pervasive developmental disorder; a neurological condition that has impaired Richard's social learning skills. From birth neurotypical individuals are able to perceive nonverbal social cues and develop the ability to conceptualize how other people feel and what their intentions are. Over time, neurotypical individuals are able to develop socially appropriate skills that they then generalize and can apply to different social situations, rules and norms. People with ASD, who lack these social learning skills, are extremely vulnerable to not understanding the social norms and legal ramifications of their interactions with others. This is especially true when they are beginning to navigate rules that apply to sexuality, dating, and the internet. Individuals with ASD can be completely unaware of the concepts of consent, age difference, and age of consent. ASD individuals typically have limited social interactions with others. Therefore, they often have a limited understanding of sociosexual norms and rules about sexual boundaries. However, because ASD individuals typically also want to adhere to social norms and rules, they do well in treatment that includes educational materials about healthy sexuality, boundaries and societal rules. Along with addressing poor decision making, ASD individuals who had previously sexually acted out, can reduce their risk to reoffend greatly, once rules and boundaries are introduced and understood. It is also important to distinguish between a person with ASD whose sexual behaviors were related to their neurodevelopment and those who may also have paraphilia or a desire and are compelled to deviant sexual interests. Richard Curtis does not present with paraphilia. Since the beginning of his treatment with this writer, Richard Curtis has not presented with sexual preoccupation, deviant sexual thinking or attitudes. Richard does not present with a sexual arousal to children; instead, Richard presents with an attraction to age-mate peers. No one, who is part of Richard's support team, including his Probation Officer, have witnessed any sexually impulsive behaviors or an interest in deviant sexual material on the internet. Richard reports not using the internet since he was 18-years-old, just after his arrest. There have been no violations or complaints against Richard since this time.

(Diana Letter, filed separately.) During the last three years as Ricky has engaged in individual therapy, he has worked hard at learning to understand the rules and boundaries that apply to sexual interactions. This understanding is something he did not have when he was eighteen years old, when the offense behavior occurred.

    **B. The Nature of the Offense Weighs in Favor of a Below-Guideline Sentence Because it Occurred Over a Brief Period of Time, Did Not Involve Hands-On Conduct or Plans to Meet in Person, and Ceased Years Before Charges Were Filed.**

Another factor the Court must consider under 18 U.S.C. § 3553(a) is the nature of the offense. Here, this factor weighs in favor of a below-Guideline sentence. Although extremely serious, Ricky's conduct did not involve any hands-on contact with VI. He did not ever meet her in real life. He made no plans to meet her in real life. The conduct occurred over a brief, five-week period of time during the summer that Ricky turned eighteen years old. The conduct ceased years before charges were filed. This Court may appropriately take the government's pre-charge delay into account in sentencing. *United States v. Robertson*, 662 F.3d 871 (7th Cir. 2011) (below-Guideline sentence appropriate where government did not charge defendants until nearly ten years after crime was committed); *United States v. Cornielle*, 171 F.3d 748, 754 (2d Cir. 1999) (downward departure appropriate where there was a four-year preindictment delay). Accordingly, this factor weighs in favor of a below-Guideline sentence of five years.

    **C. A Sentence of Five Years is More Than Sufficient to Protect the Public From Potential Recidivism Because Ricky Has Demonstrated His Ability to Function as a Productive, Law-Abiding Citizen.**

The next factor the Court must consider is whether what sentence is sufficient, but not greater than necessary, to protect the public from Ricky committing future crimes. A sentence of five years is more than sufficient. Ricky's outstanding performance on county probation and federal pretrial release demonstrates that he is not a danger to the public. Ricky's demonstrated commitment to abiding by his probation and pretrial conditions is an appropriate factor for the Court to consider. *See United States v. Munoz-Nava* 524 F.3d 1137 (10th Cir. 2008) (in drug case where guidelines 47-56 months, district court's sentence of one year and day in prison and one year home detention reasonable in part because of defendant's "behavior while on a year-and-a-half pretrial release, which the district court found to be exemplary" which is shows

defendant unlikely to reoffend); *United States. v. Baker,* 502 F.3d 465 (6th Cir. 2007) (where defendant pled guilty to possession of unregistered firearm arising from altercation with wife during which gun accidentally discharged and guideline range 27-33 months, below-guideline sentence of probation with one year house arrest proper in part because he behaved "exceedingly well" while under supervision of pretrial services). Accordingly, this factor weighs in favor of a below-Guideline sentence of five years.

### D. A Below-Guideline Sentence Would Adequately Promote Respect for the Law, Provide Just Punishment, and Deter Criminal Conduct.

A sentence of five years would sufficiently deter criminal conduct by others. There is no question that serving a term of five years in a federal prison is a severe penalty. No one observing such a sentence would conclude that Ricky had received a mere slap on the wrist. Moreover, studies of the deterrent effect of prison sentences have found that it is the prosecution of crime, rather than the sentence imposed, that has the strongest deterrent effect. In one of the best studies of specific deterrence, which involved federal white collar offenders in the pre-guideline era, no difference in deterrence was found between probation and imprisonment. Another study by the Institute of Criminology at Cambridge University examined the effects of changes to both the *certainty* and the *severity* of punishment. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." *See* David Weisburd et. al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995). Accordingly, these factors weigh in favor of the Court imposing a sentence at the mandatory minimum of five years of imprisonment.

> **E. A Below-Guideline Sentence of Five Years Would Promote the Need to Provide Ricky With Treatment in the Most Effective Manner.**

The next factor the Court must consider is the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. A below-Guideline sentence would be the most appropriate way to provide Ricky with needed treatment. While group sex offender training is available in some Bureau of Prisons facilities, it is highly doubtful that those facilities also employ individuals with background and insight into autism spectrum disorder. *See* Jennifer M. Reingle Gonzalez, Nadine M. Connell, *Mental Health of Prisoners: Identifying Barriers to Mental Health Treatment and Medication Continuity*, 104 American Journal of Public Health 12 2014 (finding that a significant portion of prisoners do not receive treatment for mental health conditions). Outside of prison, on the other hand, Ricky has developed a strong therapeutic relationship with his counselor at NuStep over the last three years. Together they have worked on safety planning, understanding boundaries and consent, and anxiety issues. High-quality treatment such as this is simply not available in prison. Therefore, this factor weighs in favor of a below-Guideline sentence of five years.

## IV.   REQUEST FOR JUDICIAL RECOMMENDATION AND SELF-SURRENDER

Given Ricky's excellent performance on pretrial supervision, the defense respectfully requests that he be allowed to self-surrender to a Bureau of Prisons facility. The defense further requests that the Court recommend that Ricky be placed at the medical facility FMC Devens.

## V.   CONCLUSION

For the reasons discussed above, the defense respectfully requests that the Court impose a sentence at the statutory mandatory minimum of five years to be followed by fifteen years of supervised release. The defense further requests that Ricky be allowed to self-surrender to FMC Devens.

|  |  |
|---|---|
| DATED: May 2, 2022 | LISA A. PEEBLES<br>FEDERAL PUBLIC DEFENDER |
|  | By: */s/ Randi J. Bianco, Esq.*<br>Supervisory AFPD<br>Bar Roll No. 507514<br>Clinton Exchange, 3rd Floor<br>4 Clinton Street<br>Syracuse, New York   13202<br>(315) 701-0080 |

cc:   Geoffrey Brown, AUSA (by ECF)
      Karlie Hall, USPO (by email)
      Richard Curtis (by mail)